IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CSL DEVELOPMENT CORPORATION, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-059 |
| | § | |
| GAIM-KO, INC.; RAY GALLEGOS; | § | |
| SOUTH PADRE ISLAND FISHING | § | |
| CENTER, INC.; STANLEY McELROY; | § | |
| DAVE FRIEDMAN; SRFP, INC.; and | § | |
| SOUTH PADRE ISLAND FISHING | § | |
| CENTER JOINT VENTURE | § | |
| | § | |
| *Defendants* | § | |

**DEFENDANTS', SOUTH PADRE ISLAND FISHING CENTER, INC.;
STANLEY McELROY; DAVE FRIEDMAN; SRFP, INC., AND,
SOUTH PADRE ISLAND FISHING CENTER JOINT VENTURE
BRIEF IN SUPPORT OF PIER DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME, Defendants, **SOUTH PADRE ISLAND FISHING CENTER, INC.,**

**STANLEY McELROY, DAVE FRIEDMAN, SRFP, INC.,** and **SOUTH PADRE ISLAND**

**FISHING CENTER JOINT VENTURE,** ("Pier Defendants"), and file this their Brief in Support

of the Pier Defendants' Motion for Summary Judgment, and in support thereof would respectfully

show unto the Court the following:

I.
SUMMARY

The Plaintiff, **CSL DEVELOPMENT CORPORATION, INC.,** ("CSL") has three

complaints against Pier Defendants: (1) that Pier Defendants tortiously interfered with an existing contract between **CSL** and Defendant **GAIM-KO, INC., ("GAIM-KO")**; (2) that Pier Defendants tortiously interfered with a prospective business relationship between **CSL** and **GAIM-KO**; and, (3) that Pier Defendants defamed **CSL**.

There is no evidence to support **CSL'S** claims for tortious interference or defamation. Consequently, summary judgment in favor of the Pier Defendants is proper in that no genuine issue of material fact exists to support a claim for tortious interference with contract, tortious interference with prospective business relations or defamation.

## II.
## ARGUMENT AND AUTHORITIES

### A. NO EVIDENCE EXISTS TO SUPPORT A CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT

To establish a claim for tortious interference with an existing contract **CSL** must establish that: (1) it had a valid contract; (2) Pier Defendants willfully and intentionally interfered with the contract; (3) the interference was the proximate cause of the **CSL'S** injury; and (4) **CSL** incurred actual damage or loss as a result of the interference. *See, e.g., Prudential Ins. Co., v. Financial review Services*, 29 S.W.3d 74, 77-78 (Tex. 2000). There is no evidence and **CSL** cannot show that: (1) Pier Defendants willfully and intentionally interfered with the contract or (2) that any alleged interference was a proximate cause of the **CSL'S** alleged injury.

The Agreement to Purchase Vessel, by its terms, specifically states that in order to be binding and enforceable, **GAIM-KO** would have to "negotiate to its satisfaction" a Pier Lease with the Pier Defendants. Because no lease of the pier was ever negotiated at any time, the Agreement to Purchase Vessel became null and void pursuant to the terms of said agreement.

In other words, the condition precedent to the contract was never satisfied. In particular, **GAIM-KO** forwarded to Pier Defendants a proposal to enter into negotiations for a lease of the Pier Defendants' pier along with a down payment check in the amount of $10,000.00. Upon receipt of same, Pier Defendants immediately returned the deposit to **GAIM-KO** and advised them of wanting to keep their options open with respect to their property.

Accordingly, the contract between CSL and **GAIM-KO** was by its terms null and void and of no effect.

As set forth above, CSL must establish that the Pier Defendants committed a willful and intentional act of interference with the agreement to purchase the vessel. *See, Browning-Ferris, Inc., v. Reyna*, 865 S.W.2d 925, 926-27 (Tex. 1993). There is no evidence that Pier Defendants willfully and intentionally interfered with the agreeement to purchase the vessel. The Pier Defendants were under no obligation to **CSL** or any other person or entity concerning their pier or the lease thereof. Furthermore, Pier Defendants did not participate in the negotiations between **CSL** and Defendant **GAIM-KO** concerning the terms of the agreement to purchase the vessel. Morever, Pier Defendants were unaware that the lease of the pier was a contingent factor upon the enforceability of an agreement to purchase the vessel. More importantly, although the agreement, in order to be binding and enforceable, was contingent upon Pier Defendants' agreement to enter a pier lease with Defendant **GAIM-KO**, Pier Defendants were under no obligation to enter into such a lease if they chose not to. That is, Pier Defendants' decision not to enter into a lease with Defendant **GAIM-KO** was neither willful nor intentional. Furthermore, because Pier Defendants were unaware of the condition precedent contained in the Agreement to Purchase the Vessel between the **CSL** and **GAIM-KO**, there was no interference on the part of the Pier Defendants. Moreover, because the

agreement between **CSL** and **GAIM-KO** was null and void by its own terms, there was no contract with which Pier Defendants could interfere.

Pier Defendants' choice not to enter into a lease for their pier with Defendant **GAIM-KO** does not constitute willful and intentional interference with the Agreement to Purchase the Vessel between **CSL** and **GAIM-KO**, but rather an exercise of its own legal rights.

Furthermore, an interference with a contract is tortious only if it is intentional. *See, Southwestern Bell Telephone Company v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). The intent required is an intent to interfere, not just an intent to do the particular acts that were done. *Id.* In this case, there is no evidence that Pier Defendants intended to interfere with the agreement. The evidence reveals that Pier Defendants were only doing the particular acts that Pier Defendants had a legal right to do. Similarly, Pier Defendants' conduct in no way induced **GAIM-KO** to breach the agreement, if any breach occurred. The agreement by its terms became null and void simply because **GAIM-KO** did not secure a lease of the pier with Pier Defendants.

Furthermore, **CSL** cannot establish that Pier Defendants' conduct was the proximate cause of its alleged damages or loss. *See*, e.g., *KTRK TV, Inc. v. Fowkes*, 981 S.W.2d 779, 790 (Tex. App. - Houston [1st Dist.] 1998, pet., denied), overruled in part on other grounds; *Turner v. KTRK TV, Inc.*, ___ S.W.3d ___ (Tex. 2000); *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 126 (Tex. App. - El Paso 1997, pet., denied). To establish proximate cause, **CSL** must prove that the Pier Defendants took an active part in persuading a party to breach its contract. *See, Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139-40 (Tex. App. - El Paso 1984, writ dism'd). There is no evidence that Pier Defendants took an active part in the drafting the agreement to purchase the vessel or persuaded **GAIM-KO** to include the condition precedent in the Agreement to Purchase the Vessel. Moreover,

there is no evidence that the Pier Defendants' conduct in any way led to the unenforceability of the agreement. Pier Defendants merely chose not to enter into a lease for its pier, a legal right to which they were entitled.

Moreover, the sale of the vessel was contingent upon a lease of the pier by virtue of the terms of the Agreement to Purchase of the Vessel signed and executed by **CSL** and **GAIM-KO**, and not by the Pier Defendants. Any alleged loss was a direct result of the terms contemplated by the parties to the Agreement to Purchase the Vessel.

**CSL** alleges that Pier Defendants tortiously interfered with the Agreement to Purchase the Vessel by making defamatory statements to **GAIM-KO**. Specifically, **CSL** alleges that the defamatory statements made by Pier Defendants caused or induced **GAIM-KO** to breach the Agreement to Purchase the Vessel. This allegation is not supported by the evidence.

For example, there is no evidence of the statements allegedly made by Pier Defendants to **GAIM-KO**, other than by Charles S. Liberis, allegedly an owner of **CSL**, that they were made. In particular, Charles S. Liberis alleges that Pier Defendants made statements to Defendant **GALLEGOS**, owner of **GAIM-KO**, that **CSL'S** cruise vessel was "unseaworthy or "unsafe." In fact, **GALLEGOS** denies that the Pier Defendants ever told him that the cruise vessel Casino Padre was either "unseaworthy" or "unsafe." *See* Affidavit of **GALLEGOS**, attached to Pier Defendants' Motion for Summary Judgment.

More importantly, **GALLEGOS** testified that any statements that may have been made by Pier Defendants had nothing to do with Defendant **GAIM-KO'S** performance under the contract. As **GALLEGOS** testified, the contract was rendered null and void by its terms because **GAIM-KO** was unable to reach an agreement with Pier Defendants concerning the lease of Pier Defendants'

pier.

In sum, there was no willful or intentional act of interference by Pier Defendants which induced **GALLEGOS** or **GAIM-KO** to breach the contract or which proximately caused any damage or loss to CSL . Pier Defendants did no more than act within their rights which in turn lead to **GAIM-KO** acting upon its contractual rights, agreed to by **CSL**. Further, there is no evidence that **CSL** suffered any damage or loss which was caused by Pier Defendants' exercise of its right not to enter a lease with **GAIM-KO**. Moreover, there is no evidence that Pier Defendants made the alleged statements that **CSL'S** cruise vessel was "unseaworthy" or "unsafe." Finally, there is no evidence that any statements made by Pier Defendants in any way induced or caused a breach of the contract. As such, summary judgment should be granted in favor of the Pier Defendants on **CSL'S** claim for tortious interference of contract.

B.   **NO EVIDENCE OF TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATION**

**CSL** cannot prove tortious interference with prospective business relation because it cannot satisfy the requirements set forth by the Texas Supreme Court in *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001).

In *Sturges*, both parties wanted to buy a parcel of land owned by Bank One. *Id.*, at 713-14. The property transaction was subject to recorded Easements with Covenants and Restrictions Affecting Land which were controlled by Wal-Mart, the owner of an adjacent parcel. *Id.* Any purchase required Wal-Mart's approval. *Id.* Seeking to use the land for expansion of its own store, Wal-Mart withheld approval of the sale to Sturges. *Id.* Sturges had intended to purchase the land for lease to a grocery store. *Id.* Sturges sued for tortious interference with the prospective lease to

the grocery store. *Id.,* at 714-15. He claimed as damages the profits anticipated on the grocery store lease. *Id.* The Court held that "to establish liability for interference with a prospective contractual or business relation, the **CSL** must prove that it was harmed by the defendant's conduct that was either independently tortious or unlawful." *Id.,* at 726. Further, the CSL must have evidence to support the alleged independent tort or unlawful conduct. As the Court held, "... **CSL** must prove that the defendant's conduct would be actionable under a recognized tort." *Id.* The Court noted however, that action by the defendant which is sharp and unfair but lawful is not actionable and cannot provide a basis for tortious interference with prospective business relations. *Id.*

In this case, Pier Defendants' conduct in not entering a lease with **GAIM-KO** was not independently tortious unlawful conduct. On the contrary, Pier Defendants' conduct was lawful and therefore is not actionable and cannot provide a basis for tortious interference alleged by **CSL**. Accordingly, **CSL'S** claims fail as a matter of law.

Furthermore, although **CSL** alleges that Pier Defendants engaged in conduct which was defamatory, fraudulent or disparaging, **CSL** has no evidence to prove that Pier Defendants' alleged conduct would be actionable as either of the following torts.

*a. Defamation*

**CSL** alleges that Pier Defendants published statements that **CSL'S** cruise vessel was "unseaworthy" or "unsafe," and that such statements were published by Pier Defendants to **GAIM-KO**. **CSL** further alleges that those statements were defamatory and, caused **GAIM-KO** to breach the contract with **CSL**.

Slander is an action for defamation. **CSL** must prove there exists evidence of the elements of an action for defamation, including, that (1) Pier Defendants published a statement of fact; (2) the

statement referred to **CSL** or its cruise vessel; (3) the statement was defamatory; (4) the statement was false; (5) with regard to the truth of the statement, the defendant was; (a) acting with actual malice; (b) negligent; or (c) liable without regard to fault, (strictly liable); and, (6) **CSL** suffered pecuniary injury (unless injury is presumed). *See*, e.g., *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, ___ (Tex. 2000). In that connection, to prove slander, **CSL** must show that Pier Defendants orally communicated or published a defamatory statement to a third person without justification or excuse. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994).[1] **CSL** has no evidence to prove Pier Defendants engaged in conduct actionable as defamation by slander or slander per se. That is, **CSL** has no evidence that Pier Defendants orally published to any third party that **CSL'S** cruise vessel was "unseaworthy" or "unsafe" or any other defamatory and false statement. Further, there is no evidence that any statements allegedly made by Pier Defendants injured **CSL'S** profession or occupation.

Specifically, **CSL'S** allegations that Pier Defendants stated to third parties that the cruise vessel was "unseaworthy" or "unsafe" are no more than mere allegations. *See* **CSL'S** Original Complaint, on file herein.

There is no evidence that Pier Defendants made such statements. In fact, the evidence reveals to the contrary. For example, boat broker Lou Daleo ("Daleo") who negotiated the contract for and on behalf of **CSL** has denied that Pier Defendants at no time ever stated to him that the cruise vessel was "unseaworthy" or "unsafe." *See* Affidavit of Lou Daleo, attached to Pier Defendants' Motion for Summary Judgment.

---

[1] A statement is considered slander per se if it injures a person in their office, profession or occupation. *Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex. App. - Houston [1st Dist.] 1989, writ denied); *Bolling v. Baker*, 671 s.W. 2d 559, 570 (Tex. App. - San Antonio, 1984, writ dism'd).

Further Daleo testified that he at no time ever communicated to Charles S. Liberis of **CSL** that the Pier Defendants stated that the cruise ship was "unseaworthy" or "unsafe." *See* Affidavit of Lou Daleo.

In addition, Defendant **GALLEGOS** denies in his deposition and affidavit that the Pier Defendants at no time ever told or communicated to him that **CSL'S** cruise vessel was either "unseaworthy" or "unsafe." *See* Affidavit of **GALLEGOS**.

In sum, there is no evidence that Pier Defendants ever stated or communicated that **CSL'S** cruise vessel was "unseaworthy" or "unsafe." That is, Pier Defendants did not orally communicate or publish any defamatory and false statements of fact to a third-party which referred to **CSL** or its cruise vessel. Rather, the evidence reveals that **CSL'S** allegations are contrary to the testimony of those third parties to whom the alleged statements were allegedly made. Furthermore, **CSL'S** allegations that those alleged statements caused or induced **GAIM-KO** to breach the contract is contrary to the evidence. The evidence reveals that the contract was null and void by the terms agreed to by **CSL** because no Pier Lease could be reached between **GAIM-KO** and Pier Defendants. Consequently, **CSL** did not suffer any pecuniary loss as a result of any conduct by Pier Defendants. Accordingly, there is no evidence of slander or slander per se by Pier Defendants. Further, there is no evidence that Pier Defendants engaged in conduct that is independently tortious or unlawful. Therefore, **CSL** cannot maintain a cause of action for tortious interference with prospective contract or business relation. *See Sturges*.

### b. *Business Disparagement*

Similarly, **CSL** has no evidence that Pier Defendants engaged in conduct which would be actionable as business disparagement. To prove a claim for business disparagement, **CSL** must be

Defendants' Brief in Support of Motion for Summary Judgment

9

able to establish that (1) Pier Defendants published disparaging words; (2) which were false; and, (3) Pier Defendants acted with malice; (4) without privilege; and, (5) **CSL** suffered special damages.

As set forth above, there is no evidence that Pier Defendants published disparaging words alleged by **CSL**. Rather, there is evidence to the contrary. Further, to show malice, **CSL** must prove that any disparaging words were published with ill will or with intent to interfere with **CSL'S** economic interest. *See*, e.g., *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1988). There is no evidence that Pier Defendants made any statements with ill will or with the intent to interfere with the **CSL'S** economic interest.

Furthermore, **CSL** has no evidence that it suffered special damages as a proximate result of any alleged disparaging words allegedly published by Pier Defendants. Rather, as set forth above, the contract for the sale of **CSL'S** cruise vessel to **GAIM-KO** was null and void by its very terms because **GAIM-KO** was unable to negotiate or secure a lease of the Pier Defendants' premises. Accordingly, the sale of **CSL'S** cruise vessel was never completed as the direct result of the terms agreed to by **CSL** in the contract. Therefore, **CSL** suffered no special damages as a proximate result of any alleged disparaging words allegedly published by Pier Defendants. In sum, **CSL** cannot show that Pier Defendants engaged in conduct which would be actionable as business disparagement. Therefore, **CSL'S** claims must fail as a matter of law and Pier Defendants should be granted summary judgment.

### c. *Fraud*

In a further attempt to satisfy the requirements set forth by the Supreme Court in *Sturges*, **CSL** alleges that Pier Defendants engaged in fraud. To establish a claim for fraud, **CSL** must prove that: (1) a material misrepresentation was made; (2) which was false; (3) which was either known

to be false when made or was asserted without knowledge of its truth; (4) which was intended to be acted upon; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *See, Savage v. Psychiatric Institute of Bedford, Inc.*, 965 S.W.2d 745, 752 (Tex.App. Fort Worth 1998); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990). In addition, all the elements of fraud must be alleged and proven if **CSL** is to prevail on a claim of fraud. *See, Rubalcaba v. Pacific/Atlantic Corp.*, 952 S.W.2d 552, 555-56 (Tex. App. - El Paso 1997, no writ) citing, *Sears Roebuck & Co., v. Meadows*, 877 S.W.2d 281 282 (Tex. 1994). However, **CSL** has not alleged the elements of fraud in its complaint. More importantly, **CSL** cannot sustain its burden on each element of its fraud allegation. Therefore, **CSL** cannot satisfy the requirement that **CSL** prove Pier Defendants' conduct would be actionable as an independent tort.

Specifically, there is no evidence to support **CSL'S** allegations that Pier Defendants made a material misrepresentation concerning **CSL'S** cruise vessel, which Pier Defendants knew was false or which was made recklessly without any knowledge of its truth or falsity. Further, **CSL** has no evidence that Pier Defendants had an intention that anyone would act upon any alleged representations. Accordingly, there is no evidence to support the elements of **CSL'S** allegation of fraud against Pier Defendants. Therefore, **CSL** cannot show that Pier Defendants engaged in conduct which is independently tortious or unlawful. Accordingly **CSL'S** claim for tortious interference must fail as a matter of law. *See, Sturges.* Pier Defendants' Motion for Summary Judgment should be granted.

C. **NO EVIDENCE OF DEFAMATION**

**CSL** alleges a cause of action for defamation by slander and slander per se. The basis of **CSL'S** claim is that Pier Defendants published to third parties statements that **CSL'S** cruise vessel

was "unseaworthy" or "unsafe." As set forth above, to establish a claim for defamation by slander or slander per se, **CSL** must show evidence of the elements of an action for defamation, including, that (1) Pier Defendants published a statement of fact; (2) the statement referred to **CSL**; (3) the statement was defamatory; (4) the statement was false; (5) with regard to the truth of the statement, the defendant was; (a) acting with actual malice; (b) negligent; or (c) liable without regard to fault, (strictly liable); and, (6) **CSL** suffered pecuniary injury (unless injury is presumed). *See*, e.g., *Turner v. KTRK TV, Inc.*, ___ S.W.3d ___, ___ (Tex. 2000). In that connection, to prove slander, **CSL** must show that Pier Defendants orally communicated or published a defamatory statement to a third person without justification or excuse. *See, Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). As discussed above, **CSL** has no evidence to prove Pier Defendants engaged in conduct actionable as defamation by slander or slander per se. Specifically, **CSL** has no evidence that Pier Defendants orally published to any third party that **CSL'S** cruise vessel was "unseaworthy" or "unsafe" or any other defamatory and false statement. Further, there is no evidence that any statements allegedly made by Pier Defendants injured **CSL'S** profession or occupation.

To the extent that Pier Defendants made any statements to **GAIM-KO**, those statements were not defamatory. More importantly, any statements made were statements which were made with privilege and/or justification. Specifically, Pier Defendants are entitled to the protections of a common-law qualified privilege where the Pier Defendants' statement was; (1) made in good faith, i.e., without malice; (2) concerning a subject matter that is of a sufficient interest to the Pier Defendant, or in reference to a duty the Pier Defendant owes; and (3) communicated to another party having a corresponding interest or duty. *See, Grant v. Stop-n-Go Market*, 994 S.W.2d 867, 874 (Tex. App. - Houston, [1st Dist.] 1999, no pet.). In that connection, a statement is made without malice

when it is made without knowledge of its falsity and without reckless disregard for its truth. *See, Randall's Food Markets v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Furthermore, the privilege is presumed to be made without actual malice and CSL has the burden of proving actual malice to defeat this privilege. *See*, e.g., *Maewal v. Adventist Health Systems*, 868 S.W.2d 886, 893 (Tex. App. - Fort Worth 1993, writ denied); *Jackson v. Cheatwood*, 445 S.W.2d 513, 514 (Tex. 1995).

In this case, any statements made by Pier Defendants concerning **CSL'S** cruise vessel were made in good-faith, i.e., without malice. More importantly, **CSL** has no evidence to and cannot show actual malice by Pier Defendants.

In addition, any statements made by Pier Defendants concerned a subject matter of sufficient interest to Pier Defendants and/or were in reference to a duty Pier Defendants owed. It is established that statements are protected by a qualified privilege where the statement concerns a subject matter of a sufficient interest to the author of the statement or where the statement is in reference to a duty owed by the author. *See*, e.g., *Lomas Bank USA v. Flatow*, 880 S.W.2d 52, 54 (Tex. App. - San Antonio 1994, no writ). In fact, the Court of Appeals in *Flatow* noted that the privilege protects "any subject matter in which the author has an interest." *Id.* In addition, interests which are protectable by the privilege include, but are not limited to (1) the defendant's own interest; (2) the interest of others; (3) business interests; and (4) the public interest. *See*, e.g., *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994). In this case, any statements made by any of the Pier Defendants with respect to **CSL's** cruise vessel concerned the continued docking and/or storing of **CSL's** cruise vessel at Pier Defendants' pier. Pier Defendants clearly have a significant financial interest in their pier. Accordingly, any statements made by any of the Pier Defendants concerns a subject matter of sufficient interest to Pier Defendants. Furthermore, Pier Defendants owe a duty, among other

things, to protect and preserve Pier Defendants' pier. Accordingly, any statements made by Pier Defendants were made in reference to such duty. Therefore, because **CSL** has no evidence that Pier Defendants' statements were made with actual malice and because the evidence reveals that Pier Defendants' statements were made concerning the Pier Defendants' own interest and business interest, such statements are protected by a common-law qualified privilege. Accordingly, **CSL's** claims of defamation by slander and/or slander per se fail as a matter of law and summary judgment should be granted.

### D.   THERE IS NO EVIDENCE OF VICARIOUS LIABILITY

**CSL** alleges that Pier Defendants, **FRIEDMAN** and **McELROY** are individually liable to **CSL** under the theory of vicarious liability. Specifically, **CSL** alleges that these individual Pier Defendants are vicariously liable for the alleged conduct of Pier Defendants **SPIFC**, **SRFP** and **SPIFCJV** pursuant to the theories of alter ego and inadequate capitalization. However, there is no evidence to support **CSL's** claims based upon such theories.

Specifically, **CSL** has alleged tort claims against the individual Pier Defendants **FRIEDMAN** and **McELROY** and against corporate Pier Defendants **SPIFC, SRFP** and **SPIFCJV**. It is indisputable that the **CSL'S** tort claims relate to or arise from contractual obligations which form the basis for **CSL's** claims. It is established that where **CSL** seeks to pierce the corporate veil to impose liability for a tort claim that relates to or arises from a contractual obligation, **CSL** must prove that the individual whom **CSL** seeks to hold personally liable (1) perpetrated an actual fraud and (2) perpetrated the fraud for his own personal benefit. *See*, Texas Business Corportion Act, Article 2.21(A); *Menetti v. Chavers*, 974 S.W.2d 168, 173 (Tex. App. - San Antonion 1998, no pet.); *Castleberry*, 721 S.W.2d at 273. Indeed, Article 2.21(A)(2) specifically provides that to impose

liability on an individual for a contractual obligation "or any matter relating to or arising from the obligation," requires proof of actual fraud. Tex. Bus. Corp. Act, Art. 2.21(A)(2). Furthermore, actual fraud in the corporate veil context means dishonesty of purpose or intent to deceive. *Castleberry*, 721 S.W.2d at 273.

In this case, **CSL'S** claims against all of the Pier Defendants relate to or arise from the contractual obligations alleged by **CSL**. More particularly, **CSL'S** claims against the individual Pier Defendants, **FRIEDMAN** and **McELROY** are claims in tort, which relate to or arise from the contractual obligations alleged by **CSL**. Accordingly, in order to pierce the corporate veil and establish vicarious liability of these individual Pier Defendants, **CSL** must show that the individual Pier Defendants, **FRIEDMAN** and **McELROY**, respectively, perpetrated an actual fraud for their respective benefit. **CSL** has no evidence that the individual Pier Defendants perpetrated an actual fraud to their respective benefit. That is, there is no evidence that Pier Defendants **FRIEDMAN** or **McELROY** engaged in any conduct with a dishonesty of purpose or with the intent to deceive. *See Castleberry*, at 723.

1.  **Alter Ego:**

To prove alter ego vicarious liability with respect to Pier Defendants **FRIEDMAN** and **McELROY**, **CSL** must prove that each respective corporation was organized and operated as a mere tool or business conduit of the said individual Pier Defendants. *See, Castleberry v. Branscum*, 721 S.W.2d 270, (Tex. 1986). Factors used to prove alter ego are (1) the degree to which the corporate and individual property have been kept separate; (2) the amount of financial interest, ownership, and control the individual maintains over the corporation; and (3) whether the corporation has been used for personal purposes. *Id.* **CSL** has no evidence to prove alter ego or to support its claim that the

corporate defendants, **SPIFC**, **SRFP** and **SPIFCJV** are respectively the alter egos of the respective individual Pier Defendants, **FRIEDMAN** and **McELROY**.

2.    <u>**Inadequate Capitalization:**</u>

Furthermore to establish vicarious liability of the individual Pier Defendants under the theory of inadequate capitalization, **CSL** must show that the respective corporations each did not have enough capital for the type of business they were conducting. *See, Tigrett v. Pointer*, 580 S.W.2d 375, 382 (Tex. App. - Dallas 1978, writ ref'd n.r.e.). **CSL** has no evidence that either Pier Defendants **SPIFC**, **SRFP** and **SPIFCJV** did not have enough capital to conduct their respective business.

Accordingly, **CSL'S** claims under the theory of vicarious liability must fail as a matter of law. Therefore, Pier Defendants' Motion for Summary Judgment should in all things be granted on CSL'S theories of vicarious liability.

## IV.
## CONCLUSION

**CSL's** causes of action fail as a matter of law as there is no evidence to support its claims (1) that Pier Defendants tortiously interfered with an existing contract between **CSL** and **GAIM-KO**; (2) that Pier Defendants tortiously interfered with a prospective business relationship between **CSL** and **GAIM-KO**; and (3) that Pier Defendants defamed **CSL**. As such, the Pier Defendants are entitled to summary judgment.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 W. Price Road, Suite 9
Brownsville, TX 78520
(956) 542-5666 Tel
(956) 542-0016 Fax

By: _____
W. MICHAEL FISHER
State Bar No. 07062420
Federal Admission No.: 1080
**ATTORNEYS FOR DEFENDANTS
SOUTH PADRE ISLAND FISHING CENTER, INC.;
STANLEY McELROY; DAVE FRIEDMAN; SRFP, INC.**


**CARLA M. SAENZ & ASSOCIATES, P.L.L.C.**
1325 Palm Blvd., Suite H
Brownsville, TX 78520
(956) 541-2862
(956) 541-2864 Fax

BY: _____
Carla M. Saenz
State Bar No. 17514595
Federal Identification No. 7994
**ATTORNEYS FOR DEFENDANT
SOUTH PADRE ISLAND FISHING
CENTER JOINT VENTURE**

## CERTIFICATE OF SERVICE

  **I CERTIFY** that a true and correct copy of the above and foregoing document has been sent on this __18th__ day of April, 2002, to all counsel of record, to wit:

| | |
|---|---|
| Mr. John T. Flood<br>**Flood & Flood**<br>555 North Carancahua, Ste. 830<br>Corpus Christi, TX 78478 | *Via CM/RRR 7000 0005 5014 9428* |
| Mr. Joseph W. Grant<br>The Grant Law Firm<br>2437 Bay Area Blvd., #100<br>Houston, TX 77058 | *Via Regular Mail* |
| J.A. Magallanes<br>Magallanes, Hinojosa & Mancias<br>1713 Boca Chica Blvd.<br>Brownsville, TX 78520 | *Via Regular Mail* |
| Paul L. Fourt, Jr.<br>Attorney at Law<br>1000 E. Van Buren<br>Brownsville, TX 78520 | *Via Regular Mail* |

*/s/ Carla M. Saenz*
CARLA M. SAENZ
