IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CSL DEVELOPMENT CORPORATION, INC. | § | |
| | § | |
| Complainant, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B01-059 |
| | § | JURY DEMANDED |
| GAIM-KO, INC. and RAY GALLEGOS | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Complainant CSL Development Corporation, Inc. asks the court to deny the

motion for summary judgment filed by defendants Gaim-Ko, Inc. and Ray Gallegos

because the motion and its evidence do not establish as a matter of law that a pier lease

was not negotiated to their satisfaction; to the contrary, such motion and its evidence

indicate that negotiations did take place, and, that Gallegos was satisfied with them.

**A. INTRODUCTION**

1.      Non-movant herein, complainant CSL Development Corporation, Inc. ("CSL"),

filed a motion for partial summary judgment on August 9, 2002.  For the sake of brevity

and in accordance with Fed. Rules of Civ. P. 1 and 10(c), plaintiff will not restate and

attach such motion and its evidence; rather, CSL incorporates by reference, as if set-forth

fully herein, its motion for partial summary judgment and its attached affidavit of John

Flood and exhibits A, B, C, D, E and F.  In sum, defendants Gaim-Ko, Inc. and Ray

Gallegos' instant motion attempts to re-write the charter and purchase agreement to

require that a pier lease (or sublease) be "agreed to". (Defendants' Motion for Summary Judgment section I, paragraph starting with "On the afternoon of ..." found on third page). That is not what the contract says. It says that a lease need only be negotiated to Gaim-ko's satisfaction.

## B. OBJECTIONS TO GAIM-KO AND GALLEGOS' MOTION FOR SUMMARY JUDGMENT

2.     Plaintiff objects to the motion for summary judgment for the following reasons:[1]

a.     Plaintiff objects to the entire section labeled "FACTUAL BACKGROUND" because it purports to recite facts, yet, with the exception of one reference to the contract at issue, it references no source or basis for such facts. Such failure requires non-movant and the Court to pour through the attached evidence in an effort to verify the source of the asserted fact.

b.     Plaintiff objects to the first paragraph of the section entitled "SUMMARY JUDGMENT ARGUMENT" because it purports to establish the existence of a critical fact without any support whatsoever, that being the purpose behind the contingency made the basis of this suit. Such failure violates FRCP 56.

c.     Plaintiff objects to the second paragraph of the section entitled "SUMMARY JUDGMENT ARGUMENT" because it summarizes testimony without providing the Court or non-movants with the source of such testimony. Such summarization states that "[T]he principal parties at the November 10, 2000 meeting

---

[1] Plaintiff objects to the evidence in support of Gaim-ko and Gallegos' motion for summary judgment in section C.

<u>have all testified</u> that a Pier Sublease was not negotiated to Gaim-Ko's satisfaction"

without referencing any such testimony. Such failure violates FRCP 56.

      d.     Plaintiff objects to the entire sixth page of the motion because it

affirmatively represents to this Court that the six listed witnesses "testified" to the factual

conclusion that "[T]he Pier Lease was **NOT** negotiated to Gaim-Ko's satisfaction" when

in fact only one of the referenced affidavits (Pete Montoya's) makes such conclusory

statement.

### C. OBJECTIONS TO GAIM-KO AND GALLEGOS'

### SUMMARY JUDGMENT EVIDENCE

3.     Plaintiff objects to the affidavit of Ray Gallegos (Exhibit 2 to motion) as follows:

      a.     Plaintiff objects to the first sentence of paragraph 4. wherein Mr. Gallegos

states that "Gaim-Ko was never able to negotiate a contract for the lease of the South

Padre Island Fishing Pier from its owners" because such conclusory statement is

contradictory to Mr. Gallegos' earlier deposition testimony wherein he testified that he

met with the owners of the lease and specifically discussed their retaining the pier for his

use, and, that the owners even requested Mr. Gallegos pay them $10,000 "to secure the

pier". (Gallegos deposition p. 126). Additionally, such testimony directly contradicts

Mr. Gallegos' later testimony in that same affidavit wherein he testifies that he "did

speak to" the pier owners "about the possibility of leasing the pier in connection with the

operation of the Casino Padre". Affidavits that contradict earlier testimony are subject to

objection and being stricken. *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp.

1424, 1430 (M.D. Ala. 1996). The Court should disregard a party's affidavit that

3

contradicts that party's earlier testimony. *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Plaintiff objects to the first sentence of paragraph 4 of Gallegos' affidavit and asks that it be stricken.

b.      Plaintiff objects to the second sentence of paragraph 4. wherein Mr. Gallegos states that "[t]hat pier [South Padre Island Fishing Center pier] was the only one in the area suitable for docking the Casino Padre" because such statement is purely conclusory and no predicate is contained either in Mr. Gallegos' deposition testimony nor in his affidavit that he has personal knowledge of what pier, or piers, are suitable for docking the Casino Padre (M/V ENTERTAINER). Conclusory statements of fact are not specific, admissible evidence for summary judgment purposes. *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998). A witness must describe his familiarity and competence to testify to the facts asserted. *See, Davis v. Portline Transportes Maritime Int'l*, 16 F.3d 532, 537, n.6 (3d Cir. 1994).

4.      Plaintiff objects to the affidavit of Dave Friedman (Exhibit 6 to motion) as follows: plaintiff objects to the third sentence in the 4th paragraph wherein Mr. Friedman states that the "essential terms" of a lease were "never fully discussed" with Gallegos because such testimony contradicts Mr. Friedman's sworn deposition testimony wherein he testified that lease temporal terms and rent were specifically discussed: "$60,000 for the first year payable in advance and $120,000 per year for the following two years" were "numbers that were discussed at the meeting on November 10[th]." (Friedman deposition p. 27, lines 20 – 22). Affidavits that contradict earlier testimony are subject to objection

and being stricken. *Brassfield*, 953 F.Supp. at 1430. Plaintiff objects to the third

sentence in the 4th paragraph of Friedman's affidavit and asks that it be stricken.

5.    Plaintiff objects to inchoate Exhibit 9, the deposition testimony of John Hale,

because it is not included with the motion as evidence.

## D.  RESPONSE TO MOTION FOR SUMMARY JUDGMENT

6.    Summary judgment in Gaim-Ko and Gallegos' (movants') favor would only be

proper if such movants established no genuine issue of material fact. Fed. R. Civ. P.

56(c); *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552 (1986). A defendant

who seeks summary judgment on a plaintiff's cause of action must demonstrate the

absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

"Breach" of a contract means the failure, <u>without legal excuse</u>, to perform. [emphasis

added]. *DeSantis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex. App. – Hou [14[th] Dist.]

1987), *rev'd in part on other grounds*, 793 S.W.2d 670 (Tex. 1990); *see Bernal v.*

*Garrison*, 818 S.W.2d 79, 83 (Tex. App. – Corpus Christi 1991, writ denied). Whether

the defendant breached the contract is a question of law for the court, not a fact question

for the jury. *Bank One v. Stewart*, 967 S.W.2d 419, 432 (Tex. App. – Hou [14[th] Dist.]

1998, pet. denied). Thus, whether Gaim-Ko/Gallegos' failure to perform was legally

excused is a question of law.

7.    **Negotiations took place, and, Gallegos was satisfied with them.** To grant

Gaim-Ko/Gallegos' motion for summary judgment, the summary judgment evidence

must establish through competent summary judgment evidence that a pier sublease was

not negotiated[2] to Gallegos' satisfaction[3]. Simply stated, Gallegos wins if (1) no negotiations took place, or, (2) if they did, he can show he wasn't satisfied with them. Each parties' summary judgment evidence – <u>even defendants'</u> – establishes that negotiations took place, and, that Gallegos was satisfied with them.

     a.      <u>Did Gallegos negotiate a sublease with the pier owners?</u>

According to Gallegos and Gaim-Ko's own summary judgment evidence, the answer is, "yes":

     (1) <u>Affidavit of Peter Montoya, Gaim-Ko's accountant:</u> Regarding the 2-hour meeting on November 10, 2000, Mr. Montoya "got the impression that the Pier Owners did not want to **continue negotiations**" [emphasis added]

     (2) <u>Affidavit of Jon Hale, former general manager of Gaim-Ko:</u> testified that the November 10, 2000, meeting with the pier owners was "for the purpose of starting **negotiations** on a dock lease." [emphasis added]

     (3) <u>Affidavit of Dave Friedman, pier owner:</u> testified that after the November 10, 2000, meeting, he and his partner Stan McElroy "decided not to **negotiate further** with the Gaim-Ko representatives ..." [emphasis added].

---

[2] "ne.go.ti.ate" *vi.* [etymology: Lat. *negotiari*, to transact business] To confer with another so as to come to terms or reach an agreement. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (The Riverside Publishing Company, 1988).

[3] "sat.is.fac.tion" *n.* The fulfillment or gratification of a need, desire, or appetite. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (The Riverside Publishing Company, 1988).

Thus, according to their own testimony, Gaim-Ko's accountant and general manager, as well as one of the pier owners, considered the discussions at the November 10, 2000, meeting to be "negotiations". Therefore, only one more question remains:

      b.     <u>Was Gallegos "satisfied" with the negotiations?</u>

According to the summary judgment evidence, the answer is, "yes":

      (1) <u>Exhibit 15 to Defendants' Motion for Summary Judgment</u>: After the negotiations, Gallegos sent to the pier owners a $10,000 check and a signed agreement under a cover letter that stated:

> "Enclosed is my [$10,000 check] per our Sublease Agreement (see attached)."

Such letter, check and attached agreement are admissions by Gallegos that he was satisfied with the negotiations that preceeded such admission.

      (2) <u>Sworn testimony of Ray Gallegos:</u> Perhaps most probative is the fact that, to this day – despite litigation, depositions, affidavits and motions -- Mr. Gallegos is yet to state that he was not satisfied with the November 10, 2000, negotiations with the pier owners. Certainly, the reason he has not done so is because he <u>was</u> satisfied with the negotiations.

      (3) <u>Affidavit of Wayne Marks, former general manager of Casino Padre:</u> Mr. Marks stated in his affidavit that immediately after the November 10 meeting, Gallegos told him that satisfactory terms had been reached with the pier owners.

      (4) <u>Deposition testimony of pier owner Dave Friedman:</u> In his deposition, Mr. Friedman agreed that on November 17, 2000 – based on the letter that included a

signed sublease agreement/proposal to sublease along with a $10,000 check – it appeared Mr. Gallegos "believed" he had a lease agreement with the pier owners. (Friedman deposition p. 20, line 24 – p. 21, line 18; and, p. 36, line 21 – p. 37, line 12).

8.       **Gallegos' lawyer warned him against entering the "one-sided" charter and purchase agreement because it did not contain a contingency that a pier lease be executed.** Gaim-Ko's lawyer, Catherine Stetson, negotiated the language of the contract on behalf of Gaim-Ko and Mr. Gallegos, and, provided professional legal advice to Gaim-Ko and Gallegos in regards to the transaction to "make sure the documents reflected the parties' agreement". (Stetson deposition p. 7, lines 6 – 14) In her deposition, Ms. Stetson testified that she found the contract to be ambiguous, inaccurate, too "one-sided", and not "well written". (Stetson deposition p. 26, lines 9 – 24; p. 39, line 20 – p. 41, line 5; p. 27, lines 20 – 23). Ms. Stetson counseled Mr. Gallegos of these opinions both before and after he signed it. (Stetson deposition p. 27, line 24 – p. 28, line 5). According to Mr. Liberis, Ms. Stetson made an effort to change the agreement to make the sale of the vessel contingent upon an executed lease, however, Mr. Liberis would not agree to such condition; as a result, Ms. Stetson told Mr. Liberis that "she was going to recommend that Ray [Mr. Gallegos] not sign this agreement the way it was because she wanted that to be a condition precedent". (Liberis deposition p. 28, line 20 – p. 29, line 8). Nevertheless, Mr. Gallegos signed the agreement "over [Stetson's] objection." (Stetson deposition p. 27, lines 4 – 7).

9.    **<u>Liberis refused to change the contingency to require that a lease be signed</u>**.

CSL's President Mr. Charles Liberis knew, prior to the execution of the charter and

purchase contract, that Gaim-Ko would have a difficult time entering a lease with the

owners of the pier. (Liberis deposition p. 20, line 19 – p. 21, line 14). For this reason, he

intentionally did not include in the contract a condition that a pier lease be executed; only

that it be "negotiated" to Gaim-Ko's satisfaction. (Liberis deposition p. 20, line 19 – p.

21, line 14). Mr. Liberis consciously excluded from the charter and purchase agreement

any requirement that the pier owners execute a Sublease with Gaim-Ko:

> Q.    I'm going to show you a document that was produced by you in answers to discovery. This is -- I'll let you look at it. It's a memo -- it's a memo to Ray Gallegos from Lou Daleo. And if you don't mind, could you read the last paragraph of that document.
>
> A.    "If such a lease with the landlord is not negotiated to your satisfaction, the agreement becomes null and void and the escrowed deposit is immediately refunded to you."
>
> Q.    When did you first become aware that Lou Daleo had suggested that information - or that language to be included in the contract, and/or when did Gaim-Ko first suggest that language to you?
>
> A.    Lou Daleo suggested the language to me.
>
> Q.    Okay.
>
> A.    And I -- and I told him that I was not going to make my deal with Gaim-Ko contingent on Sea Ranch. It took me forever to negotiate a lease with them and that it was not physically possible to do it within the time frame of this lease. And I wanted to get the hell out of there. Gaim-Ko either had to proverbially get off the pot, or I was leaving.
>
> Q.    Was --
>
> A.    Daleo called me back, and he said will you at least help them negotiate? And I said I will do that; but they'll never get anything signed within the time period that's allowed, because dealing with Stan McElroy was an eternal battle and trying To get a final document was an eternal battle. I agreed to help them negotiate, which is what I did.

(Liberis deposition p. 20, line 10 – p. 21, line 14).  In later testimony, Mr. Liberis

explained the business decision behind not wanting the charter and sale of his vessel

contingent upon the execution of the pier lease, and, that Gallegos' lawyer Cate Stetson

knew full-well that the charter and purchase was not contingent upon execution of a

lease:

> You've got to understand, I am burning cash.  I'm trying to get out of South
> Padre Island.  I've been negotiating with these guys since September.  It's
> now October, Going into November.  I've not gone into the shipyard.  I've
> not gotten my lease signed in Florida because I can't do anything if I'm
> going to sell my boat.  And all I want to do at this point is go because I
> don't think they're going to do a deal.  I keep telling Lou if they want to go
> to South Padre -- let me explain. Gaim-Ko's success is my success.  If they
> don't make money, I don't get paid.  I'm convinced today, as I was then, that
> there was no way to make money in South Padre Island, Texas.  All I want
> to do is get out of there and all that Daleo's trying to do is put a deal
> together to make a fee and I've seen no money.  He keeps asking me, Cate
> wants a condition of our agreement to be that a lease gets in place there,
> and Cate's a good enough lawyer to want to demand that on her client.  I
> refused to do that because I know that it won't be done in a reasonable
> period of time, and I'm the only guy that's at risk.  They won't pay me any
> money to sit there while they negotiate with Stan for 30 or 60 days.  So I
> refused to make it a condition.  Finally, Daleo says will you help them
> negotiate?  And I said yes, but we got to get it over with.  And that's the
> short fuse in there, is a seven-day fuse.  That's my language.  That's my
> requirement, not theirs.

(Liberis deposition p. 24, line 13 – p. 25, line 16).  Gallegos' lawyer, Cate Stetson,

wanted execution of the pier lease to be "a condition" of the charter and purchase

agreement that she saw as "one-sided".  However, for the business reasons expressed,

Liberis refused.  Against his lawyer's advice, Gallegos executed the charter and purchase

agreement.

10

10. **Gaim-Ko and Gallegos are now trying to re-write the contingency to require that a pier sublease be executed.** In their motion, Gallegos and Gaim-Ko assert that:

a. "every single witness in this case ... has testified that no agreement was reached on November 10, 2000" (Defendants' Motion for Summary Judgment section IV);

b. That "the contract 'fell apart because [Ray Gallegos] couldn't get a dock lease.'" (Defendants' Motion for Summary Judgment section IV), quoting testimony of broker Lou Daleo; and

c. "[T]he deal fell through because Gaim-Ko and Pier Owners could not agree on a sublease". (Defendants' Motion for Summary Judgment section IV).

These arguments ignore the plain language of the contract and attempt to rewrite it. The Court should reject this tactic and apply the plain language contained within the contract.

## E. CONCLUSION

11. The summary judgment evidence shows (1) that at the 2-hour meeting on November 10, 2000, lease terms were negotiated, and, that Mr. Gallegos was satisfied with those negotiations; (2) that Gallegos' lawyer had warned him against entering the "one-sided" charter and purchase agreement because it did not contain a contingency that a pier lease be executed, and, (3) that CSL's president Charles Liberis had refused to change the contingency to require that the pier owners and Gaim-Ko agree to a lease. Gaim-Ko and Gallegos have failed to show that they were excused from performing as a matter of law. Consequently, the Court should deny their motion for summary judgment.

## F. PRAYER

26.    For the reasons stated above, plaintiff asks the court to deny defendants' motion

for summary judgment.

Respectfully Submitted,

By: _____

John Flood
State Bar. No. 07155910
Fed. I.D. No. 12593
900 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470
(361) 654-8877
(361) 654-8879 (Facsimile)

**ATTORNEY IN CHARGE FOR COMPLAINANT**

OF COUNSEL:

J.A. Magallanes
State Bar No. 12809500
Magallanes, Hinojosa & Mancias
1713 Boca Chica
Brownsville, Texas 78520
(956) 544-6571
(956) 544-4290 (Facsimile)

Bob Hilliard
State Bar No. 09677700
Hilliard & Muñoz, PPC
719 S. Shoreline, Suite 600
Corpus Christi, Texas 78401
(361) 882-1612
(361) 882-3015 (Facsimile)

Joseph M. Grant
State Bar No. 08301520
The Grant Law Firm
2437 Bay Area Blvd., #100
Houston, Texas 77058
(281) 286-1222
(281) 286-1444 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent by fax and regular mail to Paul Fourt, attorney-in-charge for Gaim-Ko, Inc. and Ray Gallegos on August 22, 2002.

Mr. Paul L. Fourt, Jr.
**Law Office of Paul L. Fourt, Jr.**
1000 E. Van Buren
Brownsville, Texas 78520

John Flood